# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01217-SCT

*YARDLEY SHELTON LYONS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2012 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| | GEORGE T. HOLMES |
| | WILBERT LEVON JOHNSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/14/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Yardley Shelton Lyons was indicted for one count of carjacking[1] (Count I) and one count of kidnapping[2] (Count II) in the Circuit Court of Tunica County. The indictment accused Lyons of perpetrating these acts against persons over the age of sixty-five years, subjecting him to the elderly sentence enhancement which allowed the court to sentence him

---

[1]Miss. Code Ann. § 97-3-117 (Rev. 2006).

[2]Miss. Code Ann. § 97-3-53 (Supp. 2013).

to twice the maximum statutory sentence for both counts. After finding Lyons guilty on both counts, the jury also found that he was eligible for the elderly sentence enhancement. The trial court did not impose the sentence enhancement, and instead sentenced Lyons to fifteen years for carjacking and twenty-five years for kidnapping, to be served consecutively. The court later amended Lyons's sentence on Count II, reducing it from twenty-five years to fifteen years.

¶2.     Lyons filed a motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, for a new trial. He argued that the trial court erred in failing to grant a motion for directed verdict at the close of the State's case, that the jury verdict was against the overwhelming weight of the evidence, and that the prosecution had failed to prove its case beyond a reasonable doubt. This motion was denied.

¶3.     On appeal, the Indigent Appeals Division representing Lyons has filed a brief pursuant to *Lindsay v. State*, 939 So. 2d 743 (Miss. 2005), stating that the record has been scoured and no arguable issues have been found. After reading the entire transcript and record, we have been unable to discern any issues which would warrant additional briefing or reversal. Accordingly, we affirm Yardley Shelton Lyons's convictions and sentences for carjacking and kidnapping.

## FACTS AND PROCEDURAL HISTORY

¶4.     The facts are gleaned from the testimony of the ten witnesses presented by the State. Lyons offered no witnesses and did not testify. On July 1, 2011, Eva Honsa and her husband Horst, of Savannah, Tennessee, went to Bally's Casino in Tunica. At the time of trial, Eva was seventy-nine years old, and Horst was eighty-two. They arrived between 1:30 and 2:00

2

p.m., and parked their tan 2005 Pontiac Bonneville automobile in the casino's handicapped parking zone. Eva got out of the driver's seat and went to the trunk to get Horst's wheelchair, which he had required since losing one of his legs. Eva described what happened next:

> . . . I put the wheelchair down, and I was going to the back seat to get my stuff out, you know, my purse or whatever, my coupons, whatever it was, and while I was bending down, I noticed somebody behind me, and I thought, "Well, it must be somebody who knows us, you know, to come – to greet us or what," and then I raised up, and he put his – the person put his arm around my neck and pulled me back and said, "Don't make a sound or I'll kill you."

A casino shuttle bus driver saw this happening and pulled the bus behind the Honsas' vehicle in an effort to prevent the assailant's escape. The man quickly got into the car, and was able to back up, turn around, and escape the parking lot, with Horst Honsa still in the vehicle.

¶5.     Eva never saw her attacker's face. She described him as a young, tall, slim, black man. The driver of the bus, Jerry Oden, recognized Eva's assailant as Yardley Shelton Lyons, a man to whom she had been introduced earlier in the day. Oden had been introduced to Lyons that morning by Derico Washington, a valet at the casino. Washington had met Lyons when Lyons asked to borrow Washington's cell phone. Lyons would not tell Oden his name at first, so Oden asked to see his ID. Lyons handed it over, and Oden specifically recalled having learned that the man's name was Yardley Lyons. She also remembered talking to him about his neighborhood in Memphis, with which she was familiar because she also was a Memphis resident. Around 1:30 p.m. that day, Oden saw Lyons in the parking lot of the casino, standing near some hedges and acting suspiciously. She drove her bus around to get a better look, and watched him leave the hedges as the Honsas' vehicle pulled into the parking lot. Oden witnessed Eva getting out of the car and digging around in the back seat for something

3

as Lyons approached her. Lyons grabbed the back of Eva's shoulder and put his hands around her neck. At this point, Oden drove the bus behind the car to attempt to block it in, and radioed security for assistance. She helped Eva get out of the way of the car as Lyons drove away, with Horst in the passenger seat.

¶6. There was no video footage of the incident. Lane Wester, an employee in the surveillance department at Bally's, heard about the incident in the parking lot and trained some cameras on the area. He was told that the person who had stolen the car was the same person who had asked to borrow an employee's cell phone earlier in the day, and was able to determine, by looking at the surveillance footage of Lyons throughout the day, that the person who had stolen the car was the person who had used the employee's cell phone earlier.

¶7. Horst Honsa testified that he was half in, half out of the car when a man jumped into the driver's seat and drove out of the parking lot. Horst said the man told him he had a gun, but Horst never saw one. The man held a box cutter about ten to fifteen centimeters from Horst's throat; "Frightening close," Horst testified. After leaving Bally's, the carjacker drove to Tunica National Golf Course. Horst testified that he got only a side-profile view of the driver, and did not identify him at trial. He did testify that the driver had a wart on his right cheek.

¶8. Jimmy Gipson, an employee at Tunica National, testified that he was at the front entrance of the clubhouse when a gold Bonneville pulled into the lot at high speed. Gipson identified a young black man driving, and an old white man, missing a leg, in the passenger seat. Thinking the driver was just dropping the passenger off, Gipson asked whether he could

4

assist in getting the passenger out of the car. Horst refused to get out for some time, while the driver aggressively told Gipson to remove Horst from the vehicle. Gipson was finally able to get Horst out of the car, and the driver left.

¶9. Detective Rico Harris of the Tunica County Sheriff's Office was the investigator assigned to the case. He testified that a description of the vehicle had been radioed to local police, and the Walls Police Department made contact with the vehicle after Horst was dropped off at Tunica National. There was a pursuit, and the driver of the vehicle fled to nearby Memphis, Tennessee. The driver of the car escaped on foot after stopping in Memphis and managed to elude the police. Harris developed Lyons as a suspect after talking with Derico Washington, who explained about his meeting with Lyons earlier in the day. Washington was shown a photo lineup, and he identified Lyons as the man who had asked to borrow his cell phone earlier in the day. Harris also interviewed Jimmy Gipson, the Tunica National employee. Harris showed Gipson a photo lineup, and Gipson identified Lyons as the man driving the Bonneville who had dropped off Horst Honsa at the golf course. Chief Boisseau of the Walls Police Department also identified Lyons as the man who drove the Honsas' car to Memphis during the police pursuit. Harris did not interview the only other witness to the incident, Jerry Oden. Fingerprints were taken from the Honsas' vehicle when it was recovered in Memphis, but none of the fingerprints matched those of Lyons. Lyons had used a player's card at the casino, which provided an address. He was arrested and charged with carjacking and kidnapping.

¶10. The State adduced the testimony of ten witnesses: Eva and Horst Honsa, Jimmy Gipson, Derico Washington, Jerry Oden, Lane Wester, and Rico Harris. Oden, the bus driver,

5

identified Lyons as the man she had met earlier in the day and the man who had attacked Eva Honsa and had stolen her car. Jimmy Gipson identified Lyons as the man driving the gold Bonneville that had pulled up to Tunica National and dropped off Horst Honsa. Rico Harris testified on cross-examination and without objection that a police officer involved in the pursuit of the Bonneville to Memphis identified Lyons as the man driving the car during the chase. All of the witnesses were thoroughly cross-examined by defense counsel.

¶11.    Once he was convicted, the trial court held a bifurcated sentencing hearing, in which the jury determined that, based on the ages and appearances of Horst and Eva Honsa, Lyons was subject to the elderly enhancement of his sentence pursuant to Mississippi Code Section 99-19-351 (Rev. 2007). This made Lyons eligible to receive twice the maximum sentence for both carjacking and kidnapping. The trial judge instead sentenced him to fifteen years for carjacking and fifteen years for kidnapping, to be served consecutively. Lyons filed a motion for JNOV or a new trial, which was denied. He appealed.

## ANALYSIS

¶12.    Counsel for Lyons has filed a brief pursuant to *Lindsay*, 939 So. 2d at 743, stating that, after a thorough and diligent search of the record, there are no arguable issues to appeal. Counsel has complied with the mandates of *Lindsay*, stating that she has scoured the record and reviewed

> (a) the reason for the arrest and circumstances of Yardley Shelton Lyons; (b) any possible violation of Mr. Lyons's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; (h) possible misrepresentation of the law in sentencing; (i) the indictment and all pleadings in the record; (j) any possible ineffective assistance of counsel issues; and any other possible reviewable issues.

6

*See **Lindsay***, 939 So. 2d at 748.

¶13. Counsel sent a copy of her brief to Lyons, and informed him that he had a right to file a *pro se* brief. *See **id.*** Lyons has not filed one. Pursuant to **Lindsay**, it is our duty to conduct an independent review of the record and determine whether there is any arguable issue on appeal, and, if so, to require supplemental briefing on that issue. ***Id.*** After reading the entire transcript and record, we find that there are no viable issues to review or argue on appeal.

## CONCLUSION

¶14. Appellate counsel for Lyons has complied with the procedural mandates outlined in **Lindsay**, 939 So. 2d at 743. After an independent and thorough review of the record, we find that there are no reversible issues on appeal, and that Lyons's convictions and sentences for carjacking and kidnapping should be, and hereby are, affirmed.

¶15. **COUNT I : CONVICTION OF CARJACKING AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT II: CONVICTION OF KIDNAPPING AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED AS WELL AS CONSECUTIVELY TO AND SHALL COMMENCE AT THE TERMINATION OF THE SENTENCE IMPOSED UNDER COUNT I OF CAUSE NO. 2012-0024, WITH CONDITIONS.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**